IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ROBERT L. BLACK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 3:08cv755-TFM |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Following administrative denial of his application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq*., and supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq*., Robert L. Black ("Black") received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. During judicial review, this Court remanded the case to the Commissioner for further proceedings. A second administrative decision found Black is not disabled. The Appeals Council granted review of this decision, vacated the hearing decision, and remanded for further proceedings. A third administrative decision unfavorable to Black was issued by an ALJ on December 15, 2006. When the Appeals Council rejected review of this decision, it became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. §§ 405(g) , 1383(c)(3), and 28 U.S.C. § 636 (c), and for reasons herein explained, the court AFFIRMS THE COMMISSIONER'S decision.

## I. STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is limited. The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), citing *Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton*

*v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II.  ADMINISTRATIVE FINDINGS

Black, age 53 at the time of the hearing, completed twelve years of school and two years of junior college.[1]  Black's past relevant work includes machine operator, shipping/receiving clerk, construction worker-concrete finisher, truck driver, maintenance worker, parking meter repairer, and forklift operator.[2]  He has engaged in substantial gainful work activity since the alleged onset date of February 5, 1991, and meets the insured status requirements of the Act through June 30, 1998.[3]  Consequently, he must establish disability by that date.[4]  Black's disability application claims he is unable to work because of hemorrhoids, high blood pressure, arthritis, bad hip, poor vision, depression, and a tumor behind his left eye.[5]

The ALJ found Black is severely impaired by malingering, history of polysubstance abuse, estimated borderline intellectual functioning, anti-social personality disorder, chronic headaches, mild osteoarthritis of the hips and lumbar spine, mild degenerative disc disease of the cervical spine, type II diabetes mellitus, and astroesophageal reflux disease.  Black's

---

[1] R. at 763-64.  Black denied completing a semester at junior college during the hearing, but the record contradicts this testimony.  R. at 764; 307, 371.

[2] R. at 388-89.

[3] R. at 24.

[4] R. at 762.

[5] R. at 90, 112.

nonsevere impairments include hypertension (with medical noncompliance), stable hemangiomas, and reported hearing.[6] The ALJ decided the combination of impairments does not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. This finding was based upon the absence of an opinion by any treating or examining source that Black is unable to work.[7]

The results of Black's psychological examination results from 2001 and 2006, both conducted by Dr. John Gam, Ph.D., were evaluated under listing 12.05 for mental retardation. Although Black's full scale IQ scores of 60 and 51 fall within the mental retardation range, Dr. Gam considered them invalid due to very poor effort.[8] Dr. Gerald Anderson, Ph.D., also performed cognitive tests on Black. Though the scores from this evaluation were also in the mental retardation range, Dr. Anderson placed Black in the range of borderline intellectual functioning and noted higher intellectual functioning in the past.[9]

Dr. Gam's 2006 evaluation of Black described him as a malingerer who "attempts to project a very disabled image of himself."[10] Dr. Gam also found Black was someone who "could very well be abusing alcohol and drugs," and could perform gainful employment if

---

[6] R. at 370-71.

[7] R. at 371.

[8] R. at 371, 509, 668.

[9] R. at 715, 717.

[10] R. at 670.

he abstained from substance abuse.[11]  A previous examination in 1997 by Dr. Charles T. Rubio, Ph.D., also found Black has polysubstance dependencies.[12]  The ALJ noted Black's own reports of past polysubstance abuse, as well as inconsistencies in Black's reports and testimony on the issue of when, or if, his substance abuse ceased.[13]  The only mental health treatment in the record was related to alcohol rehabilitation, rather than mental illness.[14]

Black has a history of medical treatment for musculoskeletal pain beginning in 1994. Records show he walked with a cane because of hip pain.  Between 1998 and 2002, Black was treated for arthritic pain and had surgery for hemorrhoids.  In 2002, Black requested that his cane be replaced, even though records show he ambulated independently on all surfaces. Black was treated for type II diabetes mellitus (controlled with diet), gastroesophageal reflux disease, hypertension (noncompliant with medication), hearing loss, and hemangiomas.[15]

The ALJ considered the findings by three consulting physicians as to Black's physical capacity.  A consultative physical examination conducted by Dr. David G. Fagan in 1997 found Black had chronic pain which precluded prolonged standing/walking, frequent climbing or heavy lifting.  Dr. Fagan determined sedentary work would be ideal for Black.[16]

---

[11]R. at 670.

[12]R. at 310.

[13]R. at 372.

[14]R. at 373.

[15]R. at 375-78.

[16]R. at 379-80.

Dr. Al Vester performed a consultative examination of Black in 2001 and diagnosed probable migraine headaches with osteoarthritis in hips, knees, and shoulders. Dr. Vester concluded Black can stand a maximum of two hours, walk a maximum of one hour, and sit without limitation. Based upon Black's subjective complaints, Dr. Vester found Black could frequently lift 5 pounds, occasionally lift a maximum of 20 pounds, but could never lift more than thirty pounds.[17] A consultative examination in 2006 was performed by Dr. Ammar Aldaher. Dr. Aldaher found normal grip, no muscle atrophy, and normal gait with no assistive device. He diagnosed uncontrolled hypertension, diabetes, leg pain, and musculoskeletal pain. A medical source opinion based on that examination found Black has no limitations in his ability to stand, walk, and sit.[18]

Dr. Jack Evans provided medical expert testimony at the administrative hearing. Dr. Evans's review of the record found hypertension, osteoarthritis of the hip, diabetes mellitus Type II, hearing impairment, and spondylosis of the cervical spine. Dr. Evans negated Black's claim to have had bowel cancer by explaining that, though Black once had two benign polyps removed from his colon, no impairment resulted therefrom. When the ALJ asked Dr. Evans whether Black had pain medication, Black's counsel confirmed there were no prescriptions for pain.[19]

Dr. Sydney Garner, Psy. D., reviewed the psychological record in Black's case and

---

[17]R. at 380.

[18]R. at 381.

[19]R. at 785-88.

testified at the administrative hearing. Dr. Garner noted Dr. Gam's diagnosis of malingering and polysubstance abuse in 2001 and 2006 was similar to Dr. Rubio's diagnosis of polysubstance abuse in 1997.[20] Dr. Garner also noted Black's history of employment, Army experience, high school graduation, junior college coursework, and lack of mental health treatment did not support a diagnosis of mental retardation.[21] Dr. Garner was asked how Dr. Gam diagnosed polysubstance abuse was reached if Black denied using alcohol or drugs. Dr. Garner acknowledged there was no independent proof that Black was engaging in substance abuse, but that Dr. Gam must have suspected such, or would not have diagnosed substance abuse.[22]

Marcia Schulman provide vocational expert (VE) testimony. The physical capabilities presented to the VE led her to conclude Black could perform all past work except material handler.[23] However, the mental limitations in Dr. Gam's medical source opinion precluded Black's performance of any work.[24] The ALJ and VE noted that these limitations were based on polysubstance abuse.[25]

After considering testimony from all experts and reviewing the record, the ALJ noted

---

[20] R. at 789-90; 799-800.

[21] R. at 790-91.

[22] R. at 795-97.

[23] R. at 806-810.

[24] R. at 382; 810, 815.

[25] R. at 810, 815-16.

7

that no treating or examining source had concluded Black was disabled.[26] The ALJ accepted conclusions by Drs. Gam, Rubio and Anderson that Black has borderline intellectual functioning, but cited strong indicators of his ability to function above the borderline level.[27] Examples of Black's adequate level of functioning are an absence of special education services from youth, two years of junior college, honorable discharge from the United States Army, and driving an 18-wheeler over long distances for thirteen years.[28] The ALJ found Black's statements regarding his use of alcohol and drugs over the alleged period of disability are unreliable due to inconsistencies in his statements.[29] The weight of mental health opinions in the record found Black continued to drink alcohol and/or use drugs. The ALJ noted Black's symptoms could be related to mental illness, his lack of treatment for such (other than Black's statements with no objective evidence in support), led the ALJ to conclude substance abuse is ongoing.[30] The ALJ found that, if Black ceased his substance abuse, he would be able to perform work within the limitations set forth by Dr. Aldaher, as testified to by the VE.[31] These positions include machine operator, shipping/receiving clerk, construction worker-concrete finisher, truck driver, maintenance worker, parking meter

---

[26] R. at 371.

[27] R. at 371.

[28] R. at 371.

[29] R. at 372-73.

[30] R. at 373.

[31] R. at 384.

repairer, and forklift operator.  The finding that Black is able to perform these jobs, but for his polysubstance abuse, led the ALJ to conclude he was not entitled to disability benefits under the Act.[32]

### III.  ISSUES

Black raises a single issue for judicial review:

Whether the ALJ accorded proper weight to the opinions of examining experts.

### IV.  DISCUSSION

**The ALJ gave proper weight to the opinions of examining experts.**

Black's sole issue challenges the ALJ's decision that he is not disabled based on a finding that, but for his substance abuse, he would be able to work.  Essentially, Black argues the ALJ misrepresented the opinions from two consulting psychologists before concluding polysubstance abuse, rather than true mental impairment, prevents him from working.  The Commissioner responds the ALJ correctly weighed the opinions on Black's mental health, and likewise, properly formulated Black's residual functional capacity.

The record presents four consulting psychological examinations, one by Dr. Rubio in 1997, two by Dr. Gram in 2001 and 2006, and a fourth by Dr. Anderson, also performed in 2006.  Dr. Rubio diagnosed polysubstance abuse which would likely continue for the next year.[33]  In 2001, Dr. Gam found "self-report appears to lack consistency,"poor effort, and

---

[32]R. at 31.  The ALJ's disability analysis followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520 and summarized in *Phillips v. Barnhart*, 357 F. 3d 1232 (11th Cir. 2004).

[33]R. at 310.

9

cognitive deficits attributable to alcohol/drug abuse, and the possibility of employment if Black abstained from polysubstance abuse.[34] Dr. Gam's 2006 evaluation notes Black "denies having a college education and vocational training," "tries to project a confused image," and again exerted minimal effort which invalidated the recorded measure of cognitive functions.[35] Dr. Gam diagnosed malingering and history of polysubstance abuse, and believed Black would be able to perform unskilled to semiskilled work if he abstained from substance use.[36] Dr. Anderson found borderline mental functioning but noted higher functioning in the past. Black's inconsistent self-reports to Dr. Anderson are reflected in the evaluation. For example, Black reported having crying spells approximately twice a week, but that he also is unable to cry "even though he would like to."[37]

The ALJ credited the testimony of Dr. Sydney Garner, Psy. D., who reviewed the opinions of Drs. Rubio and Gam. Dr. Garner noted Dr. Gam's diagnosis of malingering in 2006 and polysubstance abuse in 2001 and 2006, as well as the similar diagnosis of polysubstance abuse by Dr. Rubio in 1997.[38] Dr. Garner also noted Black's history of employment, Army experience, high school graduation, and junior college coursework

---

[34] R. at 507-11.

[35] R. at 667-68.

[36] R. at 670-71

[37] R. at 713, 716.

[38] R. at 387, 789-94.

countered against a diagnosis of mental retardation.[39]  The Court's review of the psychological evaluations leads it to conclude the ALJ treated the reports in a manner consistent with applicable law and regulations, as a diagnosis of malingering constitutes substantial evidence for an ALJ's decision to discredit a plaintiff's subjective complaints. *Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1213 (M.D. Ala. 2002).  The ALJ found Black's lack of candor left an unclear record as to the extent of substance abuse over the alleged period of disability.[40]  The decision details inconsistent self-reporting on Black's use of alcohol to medical personnel and in one of his disability hearings.[41]  The ALJ illustrates this issue by noting Black's report on November 20, 2001, that he drank alcohol occasionally, but stated on November 21, 2001, the next day, that he had quit drinking alcohol.[42]

The ALJ's finding that, but for Black's polysubstance abuse, he would be able to maintain gainful employment, follows section 105 of Public Law 104-121 (Contract with America Advancement Act of 1996, "CAAA").  This section requires an ALJ find whether alcoholism or drug addiction was a "contributing factor material" to a disability finding.  If these factors are "material," Black is not eligible for benefits.[43]  *See also Doughty v. Apfel*, 245 F.3d 1274, 1278-79 (11th Cir. 2001).  *Doughty* cites an SSA regulation which explains

---

[39]R. at 790.

[40]R. at 372.

[41]R. at 372-73.

[42]R. at 372.

[43]R. at 384-88.

11

"[T]he key factor in determining whether drug addiction or alcoholism is a contributing factor material to the determination of a disability (the "materiality determination") is whether the claimant would still be found disabled if he stopped using drugs or alcohol." *Id*. at 1279. Dr. Garner's testimony and the administrative record provide support for the ALJ's finding that Black would be able to work if he abstains from alcohol and/or drug use. The documented inconsistencies in Black's own statements as to his use of alcohol led the ALJ to find substance abuse was a factor in his inability to work. The ALJ distinguished between Black's inability to work due to substance abuse and his ability to work if the diagnosed abuse ceased.

The Court finds substantial evidence which supports the ALJ's finding of non-disability in Black's case, and affirms the administrative finding that he is not disabled under the Act, as amended by the CAAA.

## V.  CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law. It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**  A separate judgment is entered herewith.

Done this 30th day of July, 2009.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE